USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/19/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TARA CASEY, on behalf of herself and all others similarly situated,

                      Plaintiff,

v.

ODWALLA, INC. and THE COCA-COLA COMPANY,

                      Defendants.

17-CV-2148 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Tara Casey ("Plaintiff"), instituted this putative class action by filing a federal complaint on March 24, 2017, on behalf of herself and others similarly situated. (*See* Compl. (ECF No. 1).) Plaintiff asserts that defendants Odwalla, Inc. ("Odwalla") and The Coca-Cola Company ("Coca-Cola") (collectively, "Defendants") violated the Food, Drug and Cosmetic Act of 1983 (the "FDCA") and the New York General Business Law (the "GBL") §§ 349 and 350 and misled consumers when they labeled certain juice products "100% Juice" with "No Added Sugar." (*See* Compl. ¶1.) Plaintiff also asserts a claim for unjust enrichment. (*Id.*)

Before the Court is Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a),[1] or in the alternative for dismissal for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and for dismissal of Plaintiff's request for injunctive relief pursuant to Federal Rule of Procedure 12(b)(1) for lack of standing ("Defendants' Motion"). (*See* Defendants' Brief in Support of their Motion to Dismiss ("Defs. Br.") (ECF No. 24) at 1-3.) For the following reasons, Defendants' Motion is DENIED.

---

[1] Defendants also sought an order to dismiss, transfer, or stay the case under the first-filed-rule. (*See* Defs. Br. at 8-12.) By notice dated March 13, 2018, Defendants withdrew that portion of their motion. (*See* ECF No. 44.)

1

## FACTUAL BACKGROUND

The following facts are derived from the Complaint; their truth is assumed for purposes of this motion only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant Odwalla is a subsidiary of Coca-Cola that manufactures "over forty varieties of premium juices, smoothies, protein shakes and snack bars." (*See* Compl. ¶¶9, 16.) Odwalla is a California corporation and Coca-Cola is a Delaware Corporation with its principal place of business in Georgia. (*Id.* ¶¶9, 10.) Of the various products it produces, Odwalla manufactures and sells premium Odwalla "100% Juice" juices which contain the phrase "No Added Sugar" on the label (the "Juices"). (*Id.* ¶¶16, 17.) Plaintiff does not dispute that the label is correct; as such, Plaintiff concedes that the Juices do not contain added sugar. (*Id.* ¶17 (noting that the label "is technically true".) The labeling on Defendants' Juices appears as follows:

 

Plaintiff is a health conscious New York resident who purchased the Juices, including Groovin' Greens 100% and Berry Greens 100% Juice. (*See* Compl. ¶8.) In purchasing the Juices, Plaintiff "relied on Defendants' misleading statements that the product contained 'No Added Sugar.'" (*Id.*) Plaintiff would not have purchased the product in absence of the "No Added Sugar"

2

label. (*Id.*) Plaintiff contends that Defendants' inclusion of this phrase is impermissible under the FDCA, because the Juices "do not resemble or substitute for a food that normally contains added sugar because fruit and vegetable juices do not normally contain added sugar." (*Id.* ¶19.) Consequently, Plaintiff contends that the inclusion of "No Sugar Added" on the Juices is misleading, as it makes consumers believe that other 100% Juices without the "No Added Sugar" label contain added sugar and are therefore not as healthy. (*Id.* ¶¶20-24.) As a result of this deceptive labeling, consumers pay a premium for Defendants' products. (*Id.* ¶21.)

Defendants' moved to transfer this matter to the Central District of California, or in the alternative, to dismiss the Complaint for failure to state a cause of action. After the motion was fully submitted, Defendants filed a request asking this Court to take judicial notice of a letter dated August 31, 2017 written by Douglas A. Balentine, Director of the Office of Nutrition and Food Labeling, Center for Food Safety and Applied Nutrition, at the United States Food & Drug Administration (the "FDA Letter"). (*See* Defendants' Request for Judicial Notice ("Defs. Req.") (ECF No. 31), Ex. A.) The letter was written to the Center for Science in the Public Interest (the "CSPI"), in response to the CSPI's May 24, 2017 letter requesting that "the FDA take action to enforce its regulation" to prohibit companies from labeling 100% juices as "No Added Sugar." (*See* Defs. Req., Ex. B.) The letter is not published on the FDA's website, but was obtained by Defendants through a Freedom of Information Act request. (*See* Defs. Req., Ex. A.)

## LEGAL STANDARD

### I. Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements", or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

I.      **12(b)(1)**

A challenge to a federal court's subject matter jurisdiction is properly raised by way of a 12(b)(1) motion. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006). Without jurisdiction, the Court is devoid of the "power to adjudicate the merits of the case." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). If an official or entity is entitled to sovereign immunity, a court has no subject matter jurisdiction to hear the case. *See Cooper v. N.Y. State Dep't of Mental Health*, No. 01-CV-943 (AGS), 2001 WL 456348, at *1 (S.D.N.Y. May 1, 2001); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 37-38 (2d Cir. 1977).

# DISCUSSION

**I.    <u>Transfer Venue</u>**

Defendants first move pursuant to 28 U.S.C. § 1404(a), for an order transferring this case to the Central District of California. (*See* Defs. Br. at 12.)

28 U.S.C. §1404(a) provides that:

> [f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

On a motion to transfer, a court must consider a two-part inquiry. *Winter v. Am. Institute of Med. Sciences & Educ.*, 242 F. Supp. 3d 206, 213 (S.D.N.Y. 2017). The court must first determine whether the action could have been brought in the proposed transferee forum. *See AEC One Stop Grp. v. CD Listening Bar*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) ("The threshold question of deciding transfer of venue . . . is whether the action could have been brought in the transferee forum.").

Assuming the threshold issue is satisfied, a court must consider whether transfer is appropriate. Such a determination is arrived at by weighing a non-exhaustive list of factors, including: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice. *See e.g. N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *D.H. Blair & Co., Inc. v.*

*Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *Larew v. Larew*, No. 11-CV-5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012).

"No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Winter*, 242 F. Supp. 3d at 213 (quoting *Smart Skins v. Microsoft*, No. 14-CV-10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015)). A district court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair*, 462 F.3d at 106. It is the burden of the moving party "to make a 'clear and convincing' showing that transfer" is proper. *Atl. Recording v. Project Playlist*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009).

### A. Venue in the Central District of California

Plaintiff maintains that this case cannot be transferred to the Central District of California because venue is not proper in that district and California would not have jurisdiction over both Defendants. (*See* Plaintiff's Brief in Opposition to Defendants' Motion ("Plf. Br.") (ECF No. 28) at 12-14.) Defendants' solely contend that a similar case is already proceeding against them in the Central District of California, and for that reason alone, venue is proper and the transferee district would have jurisdiction over the Defendants. (*See* Defs. Reply at 5.)[2] This Court disagrees.

Venue is not proper in the Central District of California. 28 U.S.C. § 1391(b) provides that venue is proper in any of three locations:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[2] Defendants' contention that Plaintiff's arguments contesting the validity of venue and jurisdiction by the Central District of California misses the mark. The venue analysis does not consider whether the district at issue is already litigating a case in which the Defendants are parties. It looks at Section 1391(b) to ascertain whether venue is proper.

6

*Id.* "When venue is challenged, the court must determine whether the case falls within one of the three categories set out" in this section. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas*, 571 U.S. 49, 56 (2013).

There is no dispute that, though Odwalla is a California corporation, Coca-Cola is not. (*See* Defendants' Reply in Further Support of their Motion to Dismiss ("Defs. Reply") (ECF No. 30) at 5.) Coca-Cola is a Delaware corporation with its principal place of business in Georgia. (*See* Declaration of Sarah Ofner ("Ofner Decl.") (ECF No. 26) ¶2.) Venue would not lie under Section 1391(b)(1).

Section 1391(b)(2) cannot be met for this case in the Central District of California either. Defendants' contention that a similar action is already being litigated against them in that district may have some bearing on whether jurisdiction would be proper in that district, but has little bearing on the issue of venue. Plaintiff is a New York resident who purchased Defendants' Juices in New York, is suing under New York law, and alleges that the putative class members are al residents of New York who likewise purchased the Juices in New York. (*See* Compl. ¶¶ 6-8, 29.) Moreover, Defendants do not contend that a "substantial part of the events or omissions giving rise to the claim", 28 U.S.C. § 1391(b)(2), occurred in California. In support of their request for transfer, Defendants repeatedly maintain that the relevant evidence and witnesses reside in Texas and Georgia (not California), and the relevant facts – *i.e.* the labeling decisions – occurred in Texas and Georgia (not California). (*See* Defs. Br. at 14.) Indeed, a substantial part of the events occurred in New York and *none* of the facts relevant to this case occurred in California. Venue is not proper in the Central District of California.

In light of the fact that venue is proper in the Southern District of New York, it is evident that Section 1391(b)(3) is inapplicable. Defendants' Motion to transfer pursuant to 28 U.S.C. § 1404(a) is denied.

## II. Failure to State a Claim

Defendants otherwise argue that Plaintiff's Complaint should be dismissed because: (1) Plaintiff's state law claims are federally preempted; and (2) Plaintiff fails to state a cause of action. Defendants also contend that Plaintiff's unjust enrichment claim is duplicative.

### A. Judicial Notice

In support of their argument for preemption, Defendants request that this Court take judicial notice of and give preemptive effect to the FDA Letter, which they contend definitively proves that their labels do not violate the FDCA.[3] The Court cannot do so.

On a 12(b)(6) motion, courts are constrained in their review to the four corners of the complaint, the documents attached thereto, those that are integral to the complaint or incorporated by reference, and those facts or documents of which the court can take judicial notice. *See Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (summary order) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008); *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46 (2d Cir. 2016)); *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-00585 (AJN), 2014 WL 2526965, at *6 (SD.N.Y. Jun. 3, 2014). Courts may take judicial notice of public documents or matters of public record. *Porrazzo v Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. Sept. 30, 2011) (judicial notice of "publicly available documents" permitted). Courts may also take judicial notice of records of administrative bodies. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (proper to take judicial notice of regulations); *Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (summary order) (taking judicial notice of documents that "are all public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute . . . ."). Pursuant to Federal

---

[3] After Defendants filed their request for judicial notice, the parties thoroughly briefed the issue, (*see* ECF Nos. 32, 35, 36), and continued to provide supplemental authority to the Court regarding whether the FDA Letter is judicially noticeable and, assuming it is, whether it is entitled to deference pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997).

Rule of Evidence 201, judicially noticeable facts are those "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See* Fed. R. Evid. 201(b).

The FDA letter does not meet any of these standards. Plaintiffs dispute the assertions contained in the FDA Letter and therefore dispute this Court's ability to take judicial notice of the document on this motion. Moreover, Defendants obtained a copy of this letter, not from the FDA's website, but from a Freedom of Information Act request. (*See* Defs. Req., Ex. A.) The document cannot be properly considered on a motion to dismiss. [4] *See Church & Dwight Co.*, 2014 WL 2526965, at *7 (declining to take judicial notice of facts contained in communication by FDA).

Further, it appears that the cases which considered this specific FDA Letter or others like it which were not published on the FDA's website, only did so on motions for summary judgment. (*See* Consolidated Order on *Karim v. Naked Juice Co. of Glendora, et al*, No. BC649121 (L.A. Cnty. Sup. Ct. Apr. 3, 2018) and *Perez v. Naked Juice Co. of Glendora Inc., et al.*, No. BC649296 (L.A. Cnty. Sup. Ct. Apr. 3, 2018) ("Consol. Ord.") (ECF No. 47) (considering FDA Letter on summary judgment).) *See e.g. Wilson v. Odwalla, Inc.*, No. 17-CV-2763 (DSF) (FFMx), 2018 WL 3830119, at *3 (C.D. Cal. July 30, 2018) ("*Wilson II*") (considering the August 2017 FDA Letter on summary judgment); *see Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1206-07 (N.D. Cal. 2017) (considering letters on summary judgment); *Farris v. Am. Med. Sys., Inc.*, 185 F. Supp. 3d 1102, 1105-06 (S.D. Iowa 2015) (requiring conversion to motion for summary judgment to consider a letter from the FDA).

---

[4] Defendants' reliance on *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), does not convince this Court otherwise. In *Reid*, the 9th Circuit found that judicial notice was not required to consider the FDA's warning letters on a motion to dismiss as a type of material "establishing the legal principles governing a case." *Reid*, 780 F.3d at 962 n. 4. The Court notes that *Reid* concerned warning letters, not the type at issue here. Moreover, as discussed further, *infra*, courts in this district have not taken judicial notice of these types of letters on motions to dismiss.

9

The majority of the courts, particularly in this district, that took judicial notice of FDA letters on a motion to dismiss, however, did so where the document was publicly available on the FDA's website. *See Porrazzo*, 822 F. Supp. 2d at 411-12 (taking judicial notice of FDA letters "publically available on the FDA website"); *Becker v. Cephalon, Inc.*, No. 14-CV-3864 (NSR), 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015); *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n. 1 (N.D. Cal. 2013) (judicial notice of FDA letter motion to dismiss because "courts may take judicial notice of materials available on government agency websites"); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 (JLS) (BGS), 2018 WL 1185227, at *2 (S.D. Cal. Mar. 7, 2018) (taking judicial notice of FDA warning letters *available* on FDA website); *Gustavson v. Mars, Inc.*, No. 13-CV-04537, 2014 WL 2604774, at *3 n.1 (N.D. Cal. 2014); *Wilson v. Amneal Pharm., L.L.C.*, No. 13-CV-00333 (CWD), 2013 WL 6909930, at *5 (D. Idaho Dec. 31, 2013) (considering FDA labels, documents, letters on website, and one letter not publically available where no dispute over its authenticity). Moreover, even if judicially noticeable, this Court would be unable to consider the facts for the truth of the matter asserted. The Court cannot take judicial notice of the FDA Letter on this motion. [5]

### B. Sua Sponte Conversion to Motion for Summary Judgment

The only way the Court can consider the FDA Letter then, is if it converts this motion into one for summary judgment.

---

[5] Indeed, most of the cases provided to the Court in the parties' notices of supplemental authority have made similar determinations, holding that this exact FDA Letter is not properly considered on motions to dismiss, but can be considered and given preemptive effect on a motion for summary judgment. (*Compare* Oder on *Karim v. Naked Juice Co. of Glendora, et al*, No. BC649121 (L.A. Cnty. Sup. Ct. Sept. 8, 2017) ("Karim MTD Ord.") (ECF No. 33-1), at 1-2 (declining to consider the FDA Letter on motion to dismiss); Order on *Perez v. Naked Juice Co. of Glendora Inc., et al.*, No. BC649296 (L.A. Cnty. Sup. Ct. Sept. 8, 2017) ("Perez MTD Ord.") (ECF No. 33-2), at 1 (same); *Wilson v. Odwalla, Inc.*, No. 17-CV-2763 (DSF) (FFMx), 2017 WL 3084278, at *2 (C.D. Cal. Jun. 28, 2018) ("*Wilson I*"), *with* Consol. Order on *Karim* and *Perez* (considering FDA Letter on summary judgment).) *See also Wilson II*, 2018 WL 3830119, at *3.

Courts can sua sponte convert a 12(b)(6) motion into one for summary judgment, but only after giving all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)). The critical inquiry is whether a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside of the pleadings." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995).

While the record demonstrates that both parties have had numerous opportunities to argue whether this Court should consider the FDA Letter and if so, what impact it would have on this litigation, (*see* ECF Nos. 31- 33, 35-41, 47-52, 54), the majority of the cases in this district only convert 12(b)(6) motions to ones for summary judgment where a party has explicitly asked for that relief in the alternative, *see e.g. Grodon*, 61 F.3d at 1052-53; *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 467 (S.D.N.Y. 2010); *Alpina Ins. Co., Ltd. v. Trans Am. Trucking Serv., Inc.*, No. 03-CV-0740 (WHP), 2004 WL 1673310, at *3 (S.D.N.Y. Jul. 28, 2004). Defendants have not requested such alternate relief; to avoid the possibility of surprise, the Court declines to decide the issue on the merits at this time.

The Court does find however, that consideration of the FDA Letter, if properly poffered may be more appropriate on a summary judgment motion. The Court also acknowledges that the FDA Letter, if properly proffered, may behave a considerable impact on Plaintiff's case, as it does appear to be the FDA's interpretation of its own regulations.

**C.     Preemption**

As this Court will not consider the FDA Letter on this motion to dismiss, it must consider the merits of Defendants' arguments for failure to state a cause of action; principally, that

Plaintiff's GBL claims are preempted by the FDCA because the inclusion of "No Sugar Added" on the Juice's label complies therewith. (*See* Defs. Br. at 12-22.) This Court disagrees.

Because federal law is "the supreme Law of the Land," U.S. Const. art. VI, cl. 2, "Congress has the power to preempt state law," *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). In interpreting the presence and scope of preemption, a court starts with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Nevertheless, in every preemption case, "the purpose of Congress is the ultimate touchstone." *Id.* (internal quotation marks omitted). The party seeking preemption "bear[s] the considerable burden or overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806, 814 (1997).

The FDCA was enacted to empower the FDA "promote public health' by 'ensuring that . . . foods are safe, wholesome, sanitary and properly labeled." 21 U.S.C. § 393(b)(1). There is no private right of action under the FDCA. *See Merrell Dow Pharms., Inc. v. Thompson,*, 478 U.S. 804, 810 (1986). In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA") which amended the FDCA to "clarify and strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." *N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2008).

Here, state law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce," GBL § 349, prohibits usage of false or misleading express warranties that cause loss, *see generally CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496 (1990), and proscribes inequitable benefit at another's expense, *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

As amended, the FDCA expressly preempts certain state labeling requirements that are not identical to the FDCA's requirements. *See* 21 U.S.C. § 343-1(a)(1); *see also Daniel v. Tootsie Roll Indus., LLC*, No. 17-CV-7541 (NRB), 2018 WL 3650015, at *4 (S.D.N.Y. Aug. 1, 2018). Consequently, "if a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie." *Daniel*, 2018 WL 3650015, at *4.

The FDCA requires the following elements be met before a product can be labeled with the phrase, *inter alia*, "no sugar added":

> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and
>
> (iv) The food that it resembles and for which it substitutes normally contains added sugars; and
>
> (v) The product bears a statement that the food is not 'low calories' or 'calories reduced' (unless the food meets the requirements for a 'low' or 'reduced calorie' food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.

21 U.S.C. § 101.60(c)(2).

Plaintiff alleges that the labeling on Defendants' Juices are deceptive insofar as the inclusion of the phrase "No Sugar Added", violates 21 U.S.C. § 101.60(c)(2)(iv) because other 100% juice products do not normally contain added sugars. (*See* Plf. Br. at 22-23.) Defendants contend that their Juices do not violate the FDCA because the products they resemble or substitute fall into a broader category than "other 100% juices." (*See* Defs. Br. at 18.)

The parties agree that, for purposes of 21 U.S.C. § 101.60(c)(2)(iv), the term "substitute" is defined by § 101.13(d) of the FDCA. (*See* Defs. Br. at 18; Plf. Br. at 21.) That section defines a "substitute food" as "one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an imitation." 21 C.F.R. § 101.13(d).

The disagreement lies in how broadly the category of goods that the Juices "resemble and substitute for" should be construed. In support of their contention that it be defined broadly, Defendants point to an FDA Inspection Guide, Guide to Nutrition Labeling and Education (NLEA) Requirements (the "Inspection Guide"), which includes the following in the category of juices, nectars, fruit drinks: "all fruit juices (excluding lemon and lime juice), nectars, noncarbonated drinks containing any amount of fruit juice or nectar." (*See* Declaration of Jeffrey Rosenfeld ("Rosenfeld Decl.") (ECF No. 25), Ex. E.) As this guide is merely a chart categorizing various foods and beverages, and fails to contain any other explanatory information, it is insufficient to reflect the FDA's views on what substitutes or resembles Juices such as Defendants'. *See Wilson I*, 2017 WL 3084278, at *2 (finding the same Inspection Guide insufficient).

Moreover, Defendants' fail to demonstrate how its Juices resemble or are substitutes for the beverages contained in its proffered "fruit drink" category. To the extent that Defendants ask this Court to take judicial notice of screenshots from various manufactures of several fruit drinks that do contain added sugar, this Court questions whether such documents are judicially noticeable. Even if they were, they are merely a sample of fruit drinks on the market and fail to demonstrate how the entire category proposed by Defendants "*normally* contains added sugars." *Wilson*, 2017 WL 3084278, at *2. Defendants' citation to the Questions and Answer section of the FDA's Changes to the Nutrition Facts Label is equally unavailing as it fails to demonstrate how the Juices

are organoleptically, physically, and functionally" similar to fruit drinks.  (*See* Rosenfeld Decl., Ex. F at 8.)[6]

Additionally, the Court finds Plaintiff's citations to § 101.30(b)(3) persuasive.  There, the FDA describes when a juice can be labeled 100% juice.  Specifically, that section provides that juice products properly labeled as 100% juice but contain certain non-juice ingredients "that do not result in a diminution of the juice soluble solids . . . must be accompanied by the phrase 'with added ___,'" 21 C.F.R. § 101.30(b)(1), such as "100% juice with added sweetener."  The logical conclusion is therefore that all other juices entitled to the label "100% Juice", that do not require this modifier, must not include added sugar.  Thus, a claim that adding the phrase "No Sugar Added" to a product properly labeled "100% Juice" violates § 101.60(2)(c)(iv) because the food that it resembles or substitutes for, other 100% juices, would not "normally contain sugar," is not preempted by federal law.

Finally, this outcome is consistent with those from courts grappling with the definition of "resemble" or "substitute" on a motion to dismiss.[7]  *See Wilson*, 2017 WL 3084278, at *2 (declining the define the category broadly); *Rahman v. Mott's LLP*, No. 13-CV3482 (SI), 2014 WL 325241, at *5 n.5 (N.D. Cal. Jan. 29, 2014) (noting that defendant failed to identify how it's 100% apple juice "resembled" or "substituted" other juices); *see Kelley v. WWF Operating Co.*, No. 17-CV-117 (LJO) (BAM), 2017 WL 2445836, at *5 (E.D. Cal. Jun. 6, 2017) (declining to decide whether almond milk substitutes for or resembles dairy milk).  While not all of these courts

---

[6] Indeed, current FDA regulations responding to comments on section 101.60 are instructive.  *See Raham v. Mott's LLP*, No. 13-CV-3482 (SI), 2014 WL 325241, at *5 n.4 (N.D. Cal. Jan. 29, 2014).  While discussing salt content, the FDA explicitly said that "if no salt is added to canned corn, the food that it resembles and for which it substitutes is canned corn, not frozen corn."  58 F.R. 2302-01 at 77.  Such language appears to support Plaintiff's contention that the beverages the Juices resemble and for which they substitute are other 100% juices.
[7] None of the districts within the Second Circuit have addressed this narrow issue, so the Court looks to districts in outside Circuits as persuasive authority for guidance on this issue.

15

dealt with the precise issue of preemption, their determinations are nevertheless persuasive, particularly in the absence of explicit FDA Guidance to the contrary.[8]

In light of the foregoing, Plaintiff's GBL claims, as alleged, are not preempted by the FDCA.

### D. Allegations for Violation of FDCA

Contrary to Defendants' positon, Plaintiff does allege sufficient facts to make out a GBL claim on the basis that their label violates § 101.60(2)(c)(iv) of the FDCA.

Defendants specifically argue that Plaintiff's Complaint fails in two respects: (1) it does not "allege facts demonstrating that Odwalla Juices do not resemble and serve as a substitute for other products that normally contain added sugar", (*see* Defs. Br. at 22); and (2) it does not "allege specifically how the "No Added Sugar" claim is misleading", (*id.* at 23.) As to substitute products, Plaintiff alleges that: "in reality, similar juice products do not contain added sugar", (Compl. ¶3), "fruit and vegetable juices do not normally contain added sugar", (*id.* ¶19), and "the purported difference between the Products and competitors' products is non-existent" (*id.* ¶22.) As to the nature of the misleading conduct, though unusual, Plaintiff alleges that the label "implies that other similar products do not have added sugar and are therefore less healthy, and masks that [sic] fact that the Products already contain large amounts of sugar, (*id.* ¶17), and that such labeling indicates "that [Defendants' Juices are] of a superior quality than competitor's products", (*id.* ¶23), permitting Defendants to charge a premium for them, (*id.* ¶¶24-25.) The allegations are sufficient.

---

[8] The Court recognizes that upon consideration of the FDA Letter, it may have reached a different result (assuming the document is entitled to *Auer* deference – a conclusion the Court does not reach). Nevertheless, this Court was constrained to deciding the motion only on the facts and documents properly considered on a motion to dismiss.

### E. Unjust Enrichment

Defendants also seek dismissal of Plaintiff's unjust enrichment claim as duplicative of the purported GBL claims. (*See* Defs. Br. at 23-24.) The Court grants this portion of Defendants' Motion.

Where a plaintiff "simply restates the elements of other claims" to support an allegation for unjust enrichment, that claim must be dismissed as duplicative. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014); *see also Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015); (dismissing unjust enrichment claim as duplicative); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (same). Here, Plaintiff's claim for unjust enrichment contends that Defendants obtained a profit when they impermissibly placed the phrase "No Added Sugar" on their products which "created the impression" that their Juices were "of superior quality than similar juice products." (Compl. ¶66.) These facts are the exact same that form the basis of her GBL claims. Dismissal is proper.

### III. Article III Standing

Lastly, Defendants contend that Plaintiff lacks standing to seek injunctive relief because she cannot demonstrate future risk of harm. (*See* Defs. Br. at 24-25.) This Court agrees.

To have standing to seek injunctive relief, a plaintiff must establish a "real or immediate threat" of injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Although "past injuries" can support a claim for "money damages," a party cannot rely on past injury alone to provide a basis for standing to seek injunctive relief. *Nicosia*, 834 F.3d at 239; *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *Lyons,* 461 U.S. at 105-06); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).

Plaintiff can only properly do so if she establishes that "she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239. Plaintiff fails to do so.

Plaintiff does not allege that she will purchase Defendants' products in the future; thus, her request impermissibly relies on past injury alone. *See Buonasera v. Honest Company, Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016); *see also Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) (dismissing claim for injunctive relief where no "allegations that [plaintiff] intends to purchase the [product] again").

Moreover, the claim that she would not have purchased the "Odwalla Products had Defendants not misrepresented the contents and nature of their Products", (*see* Compl. ¶8), is effectively a concession that she does not intend to purchase the product in the future, particularly if Defendants are required to alter their labeling scheme, *see Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017); *see also Price v. L'Oreal USA, Inc.*, No. 17-CV-0614 (LGS), 2017 WL 4480887, at *6 (S.D.N.Y. Oct. 5, 2017); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at * 5 (S.D.N.Y. Oct. 26, 2016) (no future harm established where conditional allegations indicated Plaintiff was unlikely to purchase candy again). Consequently, amendment is futile. *Hidalgo*, 148 F. Supp. 3d at 296 (amendment futile where "Complaint effectively asserts that regardless of" enjoinment of the deceptive practices, plaintiff "will refrain from purchasing" the products).

Plaintiff attempts to distinguish *Nicosia* by arguing that it was decided "because defendant ceased selling the product at issue." (*See* Plf. Br. at 25.) The Court disagrees with this interpretation. *Nicosia* held that past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar

way." *Nicosia*, 834 F.3d at 239. While the Court did address Amazon's discontinuance of the product in rendering its decision, it also noted that plaintiff failed to "allege that he intend[ed] to use Amazon in the future to buy *any* products, let alone food and drug products generally or weight loss products in particular." *Id.* Plaintiff likewise fails to allege that she will purchase Odwalla products in the future at all, let alone the Juices.

Moreover, this outcome is consistent with other cases in this District, *see e.g. Buonasera*, 208 F. Supp. 3d at 565; *Price*, 2017 WL 4480887, at \*6; *Izquierdo*, 2016 WL 6459832, at \*5, and is not even the prevailing approach in the Eastern District,[9] *see e.g. Hasemann v. Gerber Prods. Co.*, No. 15CV2995 (MKB), 2016 WL 5477595, at \*8 (Sept. 28, 2016 E.D.N.Y.) ("alleg[ing] a risk of future injury" is constitutional predicate for injunctive relief); *see also Hughes v. The Ester C Co.*, 317 F.R.D. 333, 357 (E.D.N.Y. 2016) (finding "persuasive those cases holding that plaintiffs lack Article III standing" for injunctive relief related to past harm); *Sitt v. Nature's Bounty, Inc.*, No. 15CV4199, 2016 WL 5372794, at \*7 (E.D.N.Y. Sept. 26, 2016) (no standing for injunctive relief where "Plaintiff has failed to allege a risk of future injury"). Defendants' Motion in this regard is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is DENIED in part and GRANTED in part. It is granted insofar as it seeks dismissal of Plaintiff's unjust enrichment claim and an Order precluding Plaintiff from seeking injunctive relief. It is denied in all other respects. As venue would not be proper in the Central District of California, transfer would not be appropriate. Additionally, the Court cannot consider the FDA Letter on this motion to dismiss and it therefore finds that, on the facts alleged and matters of which this Court may take judicial notice, Plaintiff's

---

[9] Plaintiff rests her argument on the reasoning in *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 2015).

claims are not preempted by the FDCA because Plaintiff sufficiently alleges that Defendants' labeling violates the FDCA and Defendants have not convinced this Court that their labeling is in compliance therewith. Nevertheless, the Court acknowledges the potential import of the FDA Letter and believes it is more properly considered on a motion for summary judgment. Defendants must answer the Complaint on or before October 12, 2018. The parties are also directed to appear for a status conference on October 19, 2018 at 11:30 a.m. at which time Defendants can seek leave to file a motion for summary judgment if they so choose. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 23.

Dated: September 19, 2018            SO ORDERED:
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge